UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | Case No. 24-CR-282 (APM) |
| v. : | |
| : | |
| KELLY ADAMS, : | |
| : | |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through the United States Attorney for the District of Columbia, respectfully submits this Memorandum in Aid of Sentencing. For the reasons set forth below, the Government asks that the Court sentence the defendant to 18 months and three years of supervised release.

### I. SENTENCING FACTORS

In sentencing a defendant, after calculating the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. Section 3553.[1] *See Gall v. United States*, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses. *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949). Finally, under the

---

[1] The Pre-Sentence Report (PSR) found that the defendant's Guideline range is 15-21 months. The Government agrees with that calculation.

1

Guidelines and Section 3553, similarly situated defendants should receive like punishments. *See* 18 U.S.C. Section 3553(a)(6).

II.     **FACTUAL BACKGROUND**

As set forth in the Statement of Offense (Doc. 28), on July 20, 2023, federal agents were conducting surveillance in connection with a narcotics investigation. Metropolitan Police Department Detective Michael Callahan, an FBI Task Force Officer, was assisting in the investigation. He was driving an unmarked truck as part of the surveillance team.

At about noon, the agents observed defendant Kelly Adams vehicle meet up with the target of their drug investigation in the parking lot of a shopping center. Adams got into the target's vehicle briefly and then returned to his car. Based on their training and experience and other evidence, the agents believed Adams had purchased narcotics from the target. They began to follow Adams who had an unidentified female passenger in his car.

Adams drove over the Sousa Bridge but instead of proceeding back to Virginia, he headed onto Southern Avenue toward Pennsylvania Avenue, S.E. He pulled into an alley near Barney Circle/K Street, S.E. that runs parallel to K and L Streets, S.E. An agent followed behind Adams in his vehicle. Det. Callahan entered the alley from the opposite direction after a short while.

The agent approaching the defendant from the rear activated the lights in his vehicle when he realized that they were close to boxing Adams in between the two law enforcement vehicles. Adams then put his car in reverse, hitting one law enforcement vehicle. Det. Callahan got out of his vehicle and began to approach Adams. From about fifteen away, Callahan showed Adams his badge which was hanging from his neck on a chain. Adams put up his hands at first, but he then drove directly at Det. Callahan at a high-rate speed. Det. Callahan attempted to jump out of the

way, but the defendant ran over his foot. Det. Callahan had deep bone bruise and had to wear a boot for approximately one month.[2]

### III.    SENTENCING RECOMMENDATION

As noted above, after calculating and consulting the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553(a). The Government addresses the relevant factors in this case below.

#### A. Nature and Circumstances of the Offense

The Government views the assault on a federal officer engaged in his duties as a serious offense. *See, e. g., United States v. Lehi*, 446 Fed. Appx. 96 (10th Cir. 2011) (finding sentence of 33 months for spitting in the face of federal officer substantively reasonable).

In this case, apparently after purchasing narcotics, the defendant drove recklessly to avoid law enforcement officers. He ran over Det. Callahan's foot and struck another vehicle. Luckily, Det. Callahan and the other agents did not receive more serious or permanent injuries. However, the Government notes the inherent danger in the defendant's conduct, and how the situation could easily have escalated into a more deadly situation. *See, e. g., United States v. Hutchins*, 179 Fed. Appx. 594 (11th Cir. 2006) (sentencing defendant to 63 months when he drove directly at officers at 55 mph causing them to draw their weapons and take cover behind another vehicle); *United States v. Smith*, 743 Fed. Appx. 943 (11th Cir. 2018) (sentencing defendant to 240 months as a career offender when he reversed his vehicle at a high-rate of speed striking a marshal's vehicle and moving it 20 feet).

---

[2] The Government has asked Det. Callahan for a restitution amount. However, he is out of the country and has not responded. In any event, he went to the MPD clinic for treatment and did not to our knowledge incur out-of-pocket medical bills.

B. **Deterrence and the Need to Protect the Public**

As indicated above, the Government views this as a serious offense that endangered the lives of law enforcement officers. The Government believes that a sentence of incarceration is necessary. The defendant has thus far only received probation and almost entirely suspended sentences, however, and the Court should take that into account in fashioning the appropriate sentence. *See, e. g., Qualis v. United States*, 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and to deter future misconduct, to note the length of any previous sentences imposed.")

C. **History and Characteristics of the Defendant**

The defendant is 36 years old. Unlike most defendants, he comes from a stable home, and his parents seem to have taken every step they could to help him.

Unfortunately, no family is safe from the dangers of drug addiction. Although he graduated from high school and started college, his long-time drug addiction has certainly hampered his ability to maintain a career. The defendant deserves credit for his acceptance of responsibility in this case and for enrolling in a drug rehabilitation program. The Government can only hope that this case is the wake up call he needed and that he will take advantage of treatment programs and vocational training programs available to him in the BOP.

D. **Need to Avoid Sentencing Disparities**

A sentence within the Guidelines will generally avoid unwanted sentencing disparities among defendants who have committed similar crimes. Indeed, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (quoting

*United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).  The Government believes a sentence in the mid-range of the Guidelines is appropriate in this case.

IV. **CONCLUSION**

Accordingly, the Government asks that the Court sentence the defendant to 18 months followed by three years of supervised release.  The Government will move to dismiss the indictment in this case at the sentencing hearing.

Respectfully submitted,

JEANINE F. PIRRO
United States Attorney for the District of Columbia

　　/s/ *Nihar Mohanty*
NIHAR MOHANTY
D.C. Bar No. 436-686
Assistant United States Attorney
United States Attorney's Office
for the District of Columbia
601 D Street, N.W., Fifth Floor
Washington, DC 20530
(202) 252-7700
Nihar.Mohanty@usdoj.gov